**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elva Jean Uribe,<br><br>                Plaintiff,<br><br>vs.<br><br>Commissioner of Social Security Administration,<br><br>                Defendant. | No. CV-20-01690-PHX-SPL<br><br>**ORDER** |

Plaintiff Elva Jean Uribe seeks judicial review of the denial of her application for Supplemental Security Income ("SSI") benefits under the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3). Before the Court are Plaintiff's Opening Brief (Doc. 20), Defendant's Answering Brief (Doc. 23), Plaintiff's Reply Brief (Doc. 26), and the Administrative Record (Doc. 14). Upon review, the Court vacates the Administrative Law Judge's decision (AR 14–26)[1] and remands for further proceedings.

**I.     BACKGROUND**

Plaintiff filed an application for SSI benefits, which are payable only from the time the application is filed, on June 28, 2017. (AR 14). Plaintiff testified at an administrative hearing on November 5, 2019 (AR 86–118), after which the Administrative Law Judge ("ALJ") found Plaintiff was not disabled (AR 14–26). On June 26, 2020, the Appeals Council denied Plaintiff's request for review and adopted the

---

[1] Administrative Record (*see* Doc. 14).

ALJ's decision as the agency's final decision. (AR 1–4).

The Court has reviewed the medical evidence in its entirety and will discuss the pertinent medical evidence in addressing the issues raised by the parties. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following medically determinable impairments: spine disorders, osteoarthritis, obesity, and diabetes, as well as mental health disorders that are not at issue in this appeal. (AR 16; Doc. 20 at 3). The ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since June 28, 2017, the date the application was filed." (AR 26).

## II.   LEGAL STANDARD

A person is considered "disabled" for the purpose of receiving social security benefits if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing

20 C.F.R. § 404.1520(a)). The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner at step five. *Id*. At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where they determine whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id*.

### III.  DISCUSSION

Plaintiff argues that the ALJ erred by (1) discrediting the medical opinions of Dr. Carlos Ventura and Dr. John Peachy, and (2) rejecting Plaintiff's symptom testimony. The Court will address the arguments in turn.

**A. Medical Opinions**

Plaintiff argues that the ALJ erred in discrediting the medical opinions of treating physician Dr. Ventura and examining physician Dr. Peachy. Previously, the Ninth Circuit recognized "a hierarchy among the sources of medical opinions." *Singer v. Comm'r of Soc. Sec. Admin.*, No. CV-18-01767-PHX-JJT, 2019 WL 9089997, at *2 (D. Ariz. Oct. 11, 2019) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)). This hierarchy was known as the treating physician rule, which generally afforded greater weight to the opinions of treating physicians. *Orn*, 495 F.3d at 632; *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), as amended on reh'g (Aug. 9, 2001). "In March of

2017, The Social Security Administration ("SSA") amended their regulations to abrogate the treating physician rule, among other changes." *Alonzo v. Comm'r of Soc. Sec. Admin.*, No. CV-18-08317-PCT-JZB, 2020 WL 1000024, at *3 (D. Ariz. Mar. 2, 2020) (citing *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017)). The new regulations apply to claims filed on or after March 27, 2017, 20 C.F.R. §§ 404.1520c, 416.920c, and provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The new regulations require the ALJ to articulate how persuasive each medical opinion is according to several enumerated factors, including (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. §§ 404.1520c(a)–(c), 416.920c(a)–(c). The most important factors in evaluating an opinion's persuasiveness are the first two: supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

The parties disagree as to whether the Ninth Circuit's "clear and convincing" and "specific, legitimate" standards for rejecting the opinion of a treating or examining medical source survived the amendments to the regulations. Courts in this Circuit and in this District have also disagreed on the issue. *See Tillman v. Comm'r of Soc. Sec. Admin.*, No. CV-20-01551-PHX-SPL, 2022 WL 58685, at *4 (D. Ariz. Jan. 6, 2022) (listing cases). After considering the possible standards in *Tillman*, this Court concluded that it would "defer to the SSA's 2017 regulations and assess whether the ALJ's reasoning regarding the persuasiveness of each opinion is supported by substantial evidence." *Id.* (citing *Orn*, 495 F.3d at 630; 42 U.S.C. § 405). The Court will do the same here.

   a. Dr. Ventura

The ALJ recounted Dr. Ventura's opinions, in part, as follows:

> In a Medical Assessment dated April 2018, Dr. Ventura opined . . . that [Plaintiff] could stand/walk 4 hours in an 8-hour workday and sit for 4 hours in an 8-hour workday. He determined that [Plaintiff] could life and carry 6 to 10 pounds

4

> . . . [and] could rarely stop, squat, crawl and occasionally climb and reach. He found that the claimant could occasionally handle, push/pull, and finger/fine manipulate occasionally bilaterally. . . . He opined that the claimant had moderately severe pain defined as an impairment, which severely affects ability to function 11-15% off task. On May 2019, Dr. Ventura proposed even greater restrictions equivalent to less than sedentary restrictions.

(AR 22) (internal citation omitted).

First, the ALJ found Dr. Ventura's opinions unpersuasive because they are "not sufficiently supported by records from his own records." (AR 22). The ALJ noted that although Dr. Ventura's records reflected decreased range of motion in the spine and knee at times, records from August 2017 to August 2019 "generally reveal" that Plaintiff "was in no acute distress and had normal range of motion and strength, no tenderness or swelling." (AR 23). The ALJ cites to seven treatment records in support of that statement. Notably, however, three of those records in fact reported musculoskeletal pain, decreased mobility, joint tenderness, and/or decreased range of motion. (AR 841–42, 1182–83, 1398–99). Additionally, at least six other treatment records state that Plaintiff was suffering from chronic back and joint pain and had decreased strength and range of motion. (AR 975, 1159–60, 1163–64, 1173–74, 1404, 1409–10). Thus, the Court finds a lack of substantial evidence to support the ALJ's conclusion that Dr. Ventura's records "generally" showed that Plaintiff had normal range of motion and strength, when a significant majority indicate otherwise.

Moreover, Dr. Ventura's opinions are not inconsistent with Plaintiff's lack of acute distress; the fact that a patient is not in acute pain is "somewhat meaningless" when it comes to chronic conditions such as Plaintiff's back pain and osteoarthritis. *Ekola v. Colvin*, No. 2:13-cv-1812-HRH, 2014 WL 4425783, at *6 (D. Ariz. Sept. 9, 2014) ("[I]n a medical context, 'acute' means 'having a rapid onset, severe symptoms, and a short course; not chronic.'"). In sum, while there may be slight evidence of inconsistency with the medical records, this alone does not amount to substantial evidence sufficient to find

Dr. Ventura's opinions unpersuasive. *See Garcia v. Comm'r of Soc. Sec. Admin.*, No. CV-20-08258-PCT-DLR, 2021 WL 5822642, at *3 (D. Ariz. Dec. 8, 2021) ("[S]elective citations within a few treatment notes . . . was not substantial evidence upon with the ALJ could reject [a medical] opinion.").

Second, the ALJ found Dr. Ventura's opinions unpersuasive because "[a]n October 31, 2018 report indicates that [Plaintiff] does have greater functional abilities with medication," and that she reported no side effects from the medication. (AR 23). The record does not, however, give any further explanation of *how* or *how much* Plaintiff's functional abilities improved with medication. (AR 1118). Likewise, there is no indication of whether Dr. Ventura's assessment of Plaintiff's limitations was based on her condition with medication or without it. Absent any such information, there is no basis on which to conclude that Dr. Ventura's opinions are inconsistent with or unsupported by the October 31, 2018 record. *See Tillman*, 2022 WL 58685, at *6 ("[T]he ALJ failed to cite any semblance of a pattern of sustained improvement or adequate references to improved symptoms from the larger evidentiary record which would be sufficient to constitute substantial evidence.").

Finally, the ALJ found Dr. Ventura's opinion unpersuasive because it "is not consistent with [Plaintiff's] report of activity," specifically referencing a statement in a medical record that Plaintiff enjoys camping and fishing with her cousins. (AR 23). There is no evidence, however, of how often Plaintiff went camping or fishing, or even that she did so at all during the time in question; the only evidence is that she "enjoys" those activities. (AR 1199). Without any indication that Plaintiff was *actually* going camping or fishing, this evidence cannot support a finding that Dr. Ventura's opinion was inconsistent with Plaintiff's activities. Ultimately, then, there is a lack of substantial evidence to support the ALJ's determination that Dr. Ventura's opinion was unpersuasive, and the Court finds that conclusion erroneous.

///

///

      *b. Dr. Peachy*

The ALJ recounted Dr. Peachy's opinions, in part, as follows:

> Following a consultative examination (physical) dated October 2017, John Peachy, M.D. . . . opined that [Plaintiff] could lift and/or carry less than 10 pounds both frequently and occasionally. He determined that she could stand and/or walk 2 hours in an 8-hour day and could sit for 3 hours in an 8-hour day. He found that the claimant could occasionally climb ramps/stairs but never ropes, ladders, or scaffolds and occasionally stoop, kneel, crouch, crawl, reach, handle, finger, and feel.

(AR 23).

The parties address three pieces of purported support for the ALJ's conclusion that Dr. Peachy's opinion was unpersuasive. Two of them—the October 31, 2018 report that Plaintiff had greater functional abilities with medication and Plaintiff's report that she enjoys camping and fishing with her cousins—are the same as discussed above with respect to Dr. Ventura and do not support the ALJ's conclusion with regard to Dr. Peachy's opinion, either.

      In addition, the ALJ found Dr. Peachy's opinion unpersuasive because

> pain Management records dated December 11, 2017 to October 31, 2018 show [Plaintiff] had decreased range of motion and tenderness of the spine but [Plaintiff] was generally in no acute distress and had no significant neurologic deficits. [Plaintiff] generally had 5/5 motor strength in the left and right lower extremities.

(AR 23). Again, the fact that Plaintiff was suffering no acute distress from her chronic conditions is unsurprising and unremarkable. *See Ekola*, 2014 WL 4425783, at *6. Similarly, it is unclear what relevance the absence of any neurologic deficits has to Plaintiff's functional abilities; it presents no apparent inconsistency with Dr. Peachy's assessment. Finally, it is also unclear how motor strength is inconsistent with Dr. Peachy's opinions when the same records consistently indicated decreased range of motion and tenderness. Muscle strength is not necessarily contrary to pain or decreased

functional capacity, and it does not suffice to show that Dr. Peachy's opinions are unpersuasive. *See Maske v. Comm'r of Soc. Sec. Admin.*, No. CV-18-04891-PHX-DWL, 2020 WL 813768, at *5 (D. Ariz. Feb. 19, 2020) ("Having strength in one's extremities doesn't necessarily mean, for example, that a person can sit or stand for more than six hours in a workday."). The Court therefore finds a lack of substantial evidence to support the ALJ's conclusion that Dr. Peachy's opinion was unpersuasive. The erroneous discounting of the medical opinions constitutes reversible error.

### B. Symptom Testimony

Plaintiff also argues the ALJ erred in rejecting her symptom testimony (Doc. 20 at 19–22). An ALJ performs a two-step analysis to evaluate the credibility of a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (citation omitted). If the claimant presents such evidence, then "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citation omitted). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 19).

As an initial matter, the Court notes it is difficult to determine what evidence the ALJ relied on to specifically reject Plaintiff's symptom testimony as the decision

8

immediately "drifts into a discussion of the medical evidence," leaving the Court to sift through the discussion and attempt to assess which sections specifically relate to the subjective testimony. *See Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014); *Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) ("Indeed, this Court has repeatedly rejected ALJ rationale that discussed medical evidence but provided no connection between that discussion and rejection of claimant's symptom testimony."). Regardless, the Court will address those sections discussed by the parties.

Defendant argues that the ALJ's rejection of Plaintiff's subjective symptom testimony was based on its inconsistency with her activities and with the objective medical evidence. (Doc. 23 at 10–12). The ALJ notes that Plaintiff "enjoys" spending time with family, taking care of her dogs, spending time with her cousins who pick her up every two weeks, and going camping and fishing with her cousins. (AR 21). Notably, however, there is no evidence in the record as to how often Plaintiff engaged in these activities, with the exception of her cousins picking her up every two weeks. Absent any evidence that Plaintiff regularly participated in such activities, the mere fact that Plaintiff reported enjoying them is not grounds to reject her symptom testimony. *See McLellan v. Comm'r, Soc. Sec. Admin.*, 2017 WL 5125628, at *7 (D. Or. Nov. 3, 2017) ("[M]ere enjoyment of an activity infrequently engaged in is not clear or convincing evidence sufficient to discredit Plaintiff." (citing *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014)). As to "spending time with her cousins who pick her up every two weeks," there is no evidence in the record as to how she typically spent her time with her cousins. While Plaintiff said she "enjoys" camping and fishing with her cousins, that information was in an April 8, 2019 medical record with no information about frequency (AR 1199), whereas she reported that her cousins picked her up every two weeks in an entirely separate March 6, 2018 record (AR 985).

Moreover, many of the activities cited by the ALJ are not at all inconsistent with Plaintiff's symptom testimony. It is certainly possible for Plaintiff to spend time with

family, take care of her dogs, and talk on the phone despite severe back pain and osteoarthritis. *See Vertigan v. Halter*, 260 F.3d 1044, 1049–50 (9th Cir. 2001) (finding Plaintiff's activities of getting together with friends, playing cards, and watching television were not inconsistent with her claims of pain and disability); *see also Garrison*, 759 F.3d at 1016 ("ALJs must be especially cautious with concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."). In addition, the ALJ also noted that Plaintiff "reported ongoing walking" with 22 pounds of weight loss. (AR 21). But as the Ninth Circuit has noted, a patient might do activities such as walking "*despite* pain for therapeutic reasons, but that does not mean she could concentrate on work despite the pain or could engage in similar activity for a longer period given the pain involved." *Id.* at 1050. Given Plaintiff's obesity diagnosis, that holding is applicable here. Accordingly, the ALJ's list of Plaintiff's activities does not amount to a clear and convincing reason for rejecting Plaintiff's subjective symptom testimony.

Finally, to the extent the ALJ concluded that Plaintiff's allegations regarding the severity of her pain were not supported by the medical evidence of record, this reason alone cannot suffice. The Ninth Circuit has held that "once the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added). This rule recognizes that "pain is a subjective phenomenon," and it "cannot be objectively verified or measured." *Id.* (citation omitted). The Court therefore concludes that the ALJ erred in rejecting Plaintiff's subjective symptom testimony.

**IV.    CONCLUSION**

Finding error in the ALJ's evaluation of the evidence, this case will be remanded. "The proper course, except in rare circumstances, is to remand to the agency for

additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (internal quotation marks omitted). Plaintiff argues instead that the Court should apply the credit-as-true rule and remand for calculation of benefits. One of the requisite conditions for applying the credit-as-true rule, however, is that "the record has been fully developed and further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. This case would benefit from further administrative proceedings to clarify and fill gaps in the record as explained above. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 31st day of January, 2022.

Honorable Steven P. Logan
United States District Judge